1
2
3
4
5
6
7
8
9
10
11
12

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

13  EDUARDO VALERIO, *et al.*

14                                          Plaintiffs,

15      v.

16  CITY OF SAN DIEGO, *et al.*

17                                          Defendants.

18

CASE NO: 12-CV-1200 W (WMC)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [DOC. 13]**

19      Pending before the Court is Defendants' motion for judgment on the pleadings

20  under Federal Rule of Civil Procedure 12(c).  (*MJP* [Doc. 13]; *Reply* [Doc. 20].)

21  Plaintiffs oppose. (*Opp'n* [Doc. 18].)  Plaintiffs filed a sur-reply.  (*Sur-reply* [Doc. 25].)

22      The Court decides the matter on the papers submitted and without oral

23  argument.  See Civ. L. R. 7.1(d.1).  For the reasons below, the Court **GRANTS-IN-**

24  **PART** and **DENIES-IN-PART** Defendants' motion for judgment on the pleadings.

25  //

26  //

27  //

28  //

## I.   BACKGROUND

Eduardo Valerio ("Valerio") is the founder of Valerio Resources, Inc. (with Valerio, "Plaintiffs"), a company that specializes in outdoor advertising. (*See Compl.* ¶ 10.) According to the complaint, in 2009 Plaintiffs became curious as to whether a wall space currently occupied by a sign advertising the Agua Caliente Racetrack in Tijuana, Mexico, could be used for other advertising purposes ("the advertising plan"). (*See id.* ¶ 11.)

The Agua Caliente sign is on the west wall of the California Theater ("the Theater"), which is located at Third Avenue and C Street in downtown San Diego. (*Compl.* ¶ 1.) Plaintiffs contacted Civic San Diego ("CDS")[1] to inquire whether Plaintiffs' advertising plan was feasible. (*See id.* ¶ 12.) CDS is a nonprofit corporation owned by the City of San Diego ("the City") that is authorized to implement improvement projects in downtown San Diego. About Us, CIVICSD.COM, http://www.civicsd.com (last visited June 7, 2013). After CDS approved Plaintiffs' application to repaint the Agua Caliente sign, it referred Plaintiffs to the City's Development Services Department ("the DSD") to obtain a historical resources review of their application. (*See Compl.* ¶ 13.)

A historical resources review was necessary because the Theater is designated as a historical building. (*Opp'n* 4.) On October 28, 2011, Plaintiffs submitted their CDS-approved application to Cathy Winterrowd ("Winterrowd"), the principal planner in the DSD's historical resources section. (*Compl.* ¶ 15.) On November 17, 2011, after conducting a historical resources review, Winterrowd signed Plaintiffs' application, authorizing Plaintiffs to commence their advertising plan. (*Id.*)

After receiving this signed permit (the "advertising permit") from the DSD, Plaintiffs leased the Theater's west wall from the Theater for $10,500 per month, with the intention of offering this wall space to other businesses for advertising purposes.

---

[1] Both parties refer to the CDS by its former title, the Centre City Development Corporation (or "CCDC"). The Court will refer to this entity by its current title.

(*See Opp'n* 4.)  Plaintiffs' complaint alleges that the value of the leased space as an advertising medium is about $40,000 per month.  (*Compl.* ¶¶ 14, 30.)

Apparently, members of City Council as well as historic resource preservation groups such as Save Our Heritage Organization ("SOHO") were displeased with the DSD's decision to authorize Plaintiffs' advertising permit. (*See Compl.* ¶¶ 17-21.) They believed that the Agua Caliente sign was a historically significant piece of art. (*Id.* ¶ 22.)  In response to an e-mail from one City Council member inquiring about the sign's historical significance, Winterrowd indicated that the DSD requires submission of a Historical Resource Research Report[2] ("research report") for any resource before the Historical Resources Board can consider it for formal historical designation. (*Id.* ¶ 22.) No members of City Council or SOHO conducted a research report on the Agua Caliente sign, allegedly due to the prohibitive cost of producing such a report. (*See id.* ¶ 23.)

On December 15, 2011, Winterrowd sent Valerio an e-mail notifying him that DSD was revoking the advertising permit, thereby nullifying Plaintiffs' authorization to proceed with the advertising plan. (*Compl.* ¶ 27.)  In the e-mail, Winterrowd informed Valerio that DSD would only re-authorize the advertising permit if Plaintiffs submitted a research report on the Agua Caliente sign.  (*Id.* ¶ 28.)

On May 17, 2012, Plaintiffs commenced this action against the City, Winterrowd, and DOES 1-20 (collectively, "Defendants"), alleging: (1) violation of Fifth and Fourteenth Amendment right to procedural due process; (2) unlawful taking without just compensation; (3) violation of Fifth and Fourteenth Amendment right to

---

[2] The purpose of a Historical Resource Research Report is to provide detailed information regarding the historical significance of a property. The Historic Resources Board uses these research reports in their review of resources considered for historic designation.  The reports are detail-intensive, and may require inclusion of forms from the California Department of Parks and Recreation, blueprints, surveys, chains of title, deeds, historic and current photographs of the resource, and maps. See CITY OF SAN DIEGO HISTORICAL RESOURCES BOARD, HISTORICAL RESOURCE RESEARCH REPORT GUIDELINES AND REQUIREMENTS (Appendix E, Part 1.1, 2006), available at http://www.sandiego.gov/planning/programs/historical/pdf/hrbreport.pdf.

substantive due process; (4) intentional misrepresentation; (5)  violation of California Civil Code § 52.1, and requesting injunctive relief.[3]  (*See id.*  ¶¶ 42-59.)

On October 25, 2012, Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (*See MJP* 1.)  Defendants contend that they are entitled to judgment given that: (1) they are entitled to qualified immunity with respect to Plaintiffs' first three causes of action; (2) Plaintiffs' takings claim is not ripe; (3) Plaintiffs lack the vested property right necessary to sustain either a procedural or substantive due process claim; (4) Defendants are immune from liability for intentional misrepresentation;  (5)  injunctive  relief  is  not  an  appropriate  remedy  in  this circumstance; and (6) Plaintiffs have not established the elements of a § 52.1 violation. (*See id.*)

## II.   LEGAL STANDARD

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.  Fajardo v. Cnty. of Los Angeles, 179 F.3d 698, 699 (9th Cir. 1999).  A district court may grant judgment to a defendant only when it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 529 (9th Cir. 1997) (citations omitted).

## III.   DISCUSSION

### A.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity with respect to Plaintiff's first, second, and third causes of action.  (*See MJP* 3.)  Plaintiffs contend that

---

[3] Plaintiffs bring their first three causes of action under 42 U.S.C. § 1983.

Defendants' reliance on qualified immunity is misplaced given that Plaintiffs have established a vested right in the advertising permit. (*See Opp'n* 12.) Defendants have not established that they are entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Therefore, qualified immunity will not apply if Plaintiffs plead facts which, viewed in the light most favorable to Plaintiffs, show that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. See Saucier v. Katz, 522 U.S. 194 (2001) (overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009)); Ashcroft v. al-Kidd, –U.S. –, 131 S. Ct. 2074, 2080 (2011) (quoting Harlow, 457 U.S. at 818).

Municipalities have no immunity from damages and liability resulting from violations of 42 U.S.C. § 1983. See Owen v. City of Independence, Mo., 445 U.S. 622 (1980) ("How 'uniquely amiss' it would be, therefore, if the government itself–'the social organ to which all in our society look for the promotion of liberty, justice, fair and equal treatment, and the settling of worthy norms and goals for social conduct'–were permitted to disavow liability for the injury it has begotten." (citations omitted)). Therefore, the Court **DENIES** Defendants' motion to the extent that it claims that the City is entitled to qualified immunity, and considers only whether Winterrowd is entitled to the affirmative defense.

### 1.    Plaintiff's have plead a violation of a constitutional right.

Defendants argue that Plaintiffs lack a constitutionally-protectable property interest since the Plaintiff's permit was illegally granted. (*See MJP* 3.) Plaintiffs respond that, despite the alleged illegality of the permit at the time of issue, their interest in the advertising permit vested when they incurred substantial liabilities in good faith reliance upon it. (*See Opp'n* 6-8.) Thus, Plaintiffs argue, Winterrowd violated their

12-CV-1200W

constitutionally-protectable property interest when she revoked the permit without due process.  (*See id.* 11.)

Under California law, "if a permittee has acquired a vested property right under a permit, the permit cannot be revoked." Trans-Oceanic Oil Corp. v. City of Santa Barbara, 85 Cal. App.2d 776, 783 (1948).  If a permittee does nothing after obtaining the permit or fails to comply with it terms, the proper authorities may revoke it.  Id. However, a permittee acquires a vested right if he performs substantial work and incurs substantial liabilities in good faith reliance upon a permit issued by the government. See id., 85 Cal. App.2d at 784.  Billboards constitute protectable property interests as they derive value as an advertising medium with the potential of generating high revenue.  See Traverso v. People ex rel. Dept. of Transp., 6 Cal. 4th 1152, 1161 (1993).

In entering into the two-year lease agreement with the Theater, Plaintiffs incurred substantial liabilities in good faith reliance upon the advertising permit that Defendants issued.  The parties do not dispute that Plaintiffs' $10,500 per month lease constitutes a substantial liability.  Nor do they dispute that this substantial liability was incurred in good faith reliance upon the issued advertising permit.  In light of the foregoing, Plaintiffs acquired a vested property right.  See Trans-Oceanic, 85 Cal. App.2d at 783.

Defendants contend that Plaintiffs' right to the advertising space failed to vest because the permit was illegal when issued, citing Avco Community Developers, Inc. v. South Coast Regional Commission, 17 Cal.3d 785 (1976).  (*MJP* 3.)  However, Defendants' reliance on Avco is misplaced.

At issue in Avco was whether a developer acquired a vested right to construct buildings without a building permit after incurring significant expense subdividing and grading the property. See id., 17 Cal.3d at 788. Under Orange County's building code, Avco Community Developers, Inc. ("Avco") could not obtain a building permit until it completed grading its property.  See id., 17 Cal.3d at 789.  Avco did not complete rough grading by the deadline imposed by the California Coastal Zone Conservation

Act of 1972 § 27400[4] ("the Act"), and therefore was not able to obtain a building permit.  See id., 17 Cal.3d at 790.  Avco applied to the California Coastal Zone Commission for an exemption under the Act, claiming that its substantial improvements on the property under the rough grading permit established a vested right to complete development.  Id.  The Commission denied Avco's application, and the trial court declined to issue a writ of mandate compelling the commission to grant the exemption.  Id.  On appeal, the Supreme Court of California held that "work undertaken pursuant to governmental approvals *preparatory* to construction of buildings can[not] form the basis of a vested right to build a structure which does not comply with the laws applicable at the time a building permit is issued."  Id. at 793 (emphasis added).  The court explained that by "issuing approvals for work preliminary to construction the government makes no representation that [developers] will be exempt from the zoning laws in effect at the subsequent time [a developer] applies for a building permit or that [a developer] may construct particular structures on the property."  Id.  Thus, "the government cannot be estopped to enforce laws in effect when the permit issued."  Id.

Avco does not control here, even assuming that the laws in effect at the time the City issued the permit made the permit illegal.  Unlike the plaintiffs in Avco, Plaintiffs did not incur substantial liabilities in preparation or anticipation of a permit being issued.  Rather, Plaintiffs incurred substantial liabilities *after* Defendants granted the permit.  Also, once the permit was granted, Plaintiffs had the right to proceed with their advertising plan.  Moreover, unlike Avco, no subsequent permits were required for Plaintiffs to being their painting project.

---

[4] Section 27400 of the California Coastal Zone Conservation Act of 1972 ("the Act") requires any person to obtain a permit from the California Coastal Zone Commission if they wish to develop within the coastal zone after February 1, 1973.  The Act provides an exemption for developers who, prior to the Act's effective date, acquired a vested right to complete construction projects by securing a building permit and commencing construction in good faith.

Defendants also contend that the advertising permit is defective because Defendants issued it without determining whether the Agua Caliente sign was a historic resource.  (*MJP* 4.)  According to Defendants, the advertising permit did not comply with the San Diego Municipal Code ("SDMC") because it lacked the research report required by the Historical Resources Regulations of the Land Development Code.  (*See Reply* 2.)  Defendants further contend that SDMC § 143.0212(c) requires Plaintiffs to conduct a site survey of the Agua Caliente sign as part of the research report.  (*Id.*)

SDMC § 121.0308 allows the City Manager to require the correction of a previously-issued construction permit if the permit violates the Land Development Code or any other applicable law.  This provision also applies to Plaintiff's permit.  See SDMC § 129.0102.  The parties do not dispute that Defendants have the authority to revoke permits which derogate applicable laws, but rather, whether the permit, when issued, violated an applicable law.

An examination of the relevant SDMC and Land Development Code provisions indicates that Defendants' argument is meritless.  SDMC § 143.0212(a) states, in part:

> The City Manager shall determine the need for a site-specific survey for the purposes of obtaining a construction permit or development permit for development proposed for any parcel containing a structure that is 45 or more years old and not located within any area identified as exempt in the Historical Resources Guidelines of the Land Development Manual or for any parcel identified as sensitive on the Historical Resource Sensitivity Maps.

SDMC § 143.0212(a) (emphasis omitted). The SDMC does not require a survey for every application, but rather leaves it to the City Manager to use her discretion in determining whether that requirement is necessary in a given case.  Since the SDMC does not state that a site-survey must be completed as a prerequisite for a valid permit application, Plaintiffs' advertising permit does not violate applicable law.

Defendants also argue that SDMC § 143.0211 requires Plaintiffs to provide the research report.  (*MJP* 2.)  The provision states that a "property owner or applicant shall submit required documentation and obtain a construction permit. . . .as required pursuant to this division before any development activity occurs on a premises that

contains historical resources." SDMC § 143.0211 (emphasis omitted).  The Court is unconvinced that a site-survey and research report is "required documentation," since these are discretionary, not mandatory.  See SDMC § 143.0212(a).  Moreover, in light of the statutory presumption for meaningful variation, the Court assumes that the "documentation" referred to by § 143.0211 bears a significantly distinct meaning from the "site-specific survey" mentioned by § 143.0212(a).  See, e.g., Erlenbaugh v. U.S., 409 U.S. 239, 243 (1972) ("[A] legislative body generally uses a particular word with a consistent meaning in a given context.").  Therefore, Defendants have failed to show that § 143.0211 requires Plaintiffs to provide a research report.

Moreover, the time which Defendants had to make a historic resource determination under § 143.0212(a) was not unlimited, as § 143.0212(c) makes clear:

> The City Manager shall determine the need for a site-specific survey within *10 business days of application for a construction permit* or within 30 calendar days of application for a development permit. A site-specific survey shall be required when the City Manager determines that a historical resource may exist on the parcel. If the City Manager determines that a site-specific survey is not required within the specified time period, a permit in accordance with Section 143.0210 shall not be required.

SDMC § 143.0212 (emphasis added).  Plaintiffs applied for the permit on October 28, 2011, and Defendants issued it on November 17, 2011.  (*Compl.* ¶ 15.)  A sign permit is a type of construction permit under the SDMC.  See SDMC § 129.0102.  So, Defendants had until November 11, 2011, ten business days from the date of Plaintiffs' application, to determine that the Agua Caliente sign was a potential historic resource requiring a site survey and research report.  SDMC § 143.0212(c).  However, Defendants did not require Plaintiffs to submit a site survey and research report until December 15, 2011, when Defendants formally revoked Plaintiffs permit.[5]  (*Id.* ¶¶ 27-

---

[5] Even if Plaintiffs' advertising permit could be construed as a "development permit" under the SDMC, Defendants' determination would still be untimely since it was not made on or before November 27, 2011, thirty calendar days after Plaintiffs submitted their application.  See SDMC § 143.0212(c).

12-CV-1200W

28.)  Defendants' failure to make a timely determination of the need for a site survey or research report prohibits Defendants' from contending that these documents are prerequisites to the validity of Plaintiffs' permit.  See SDMC § 143.0212.  Therefore, Plaintiffs' advertising permit is not defective for want of a site survey or research report.

In light of the foregoing, the Court finds that Plaintiffs' interest in their advertising permit vested into a constitutional property right.  Because Plaintiffs allege that revocation of that permit violated that right, the Court finds that Plaintiffs have plead facts sufficient to establish a violation of a constitutional property right.  (See Compl. ¶ 35.)

### 2.   **Plaintiffs' alleged constitutional property right was "clearly established."**

Having determined that Plaintiffs alleged a violation of a constitutional property right, the Court must consider whether Winterrowd is nevertheless entitled to qualified immunity.  Winterrowd is still entitled to qualified immunity if Plaintiffs' property right was not "clearly established" when she revoked Plaintiffs' permit. Saucier, 522 U.S. at 194.  "To be clearly established, the law must be 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' It is not necessary that the alleged act have been previously declared unconstitutional, as long as the unlawfulness was apparent in light of preexisting law." Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  See Saucier, 522 U.S. at 201.

Defendants entire argument regarding whether Plaintiffs' property right was "clearly established" is the unexplained and conclusory statement that "[g]iven the state of the law concerning issuing illegal permits, it cannot have been clearly established that a reasonable employee would find rescission of that permit unlawful." (MJP 3.)  The bare allegation that the law regarding the rescission of illegal permits is

"not clearly established" is insufficient to show why a reasonable official in Winterrowd's position, presented with the particular issues here, would not understand the unlawfulness of revoking Plaintiffs' permit.  Therefore, Defendants have not met their burden of proving that Plaintiffs' rights were not "clearly established."  In light of the foregoing, the Court **DENIES** Defendants' motion for judgment on the pleadings with respect to their qualified immunity theory.

### B.   Taking Without Just Compensation

Plaintiffs' second cause of action alleges that rescission of the permit was a taking, and as such the Fifth Amendment Takings Clause compels Defendants to pay just compensation for the value of the wall space as an advertising medium.  (*Compl.* ¶ 45.)  Defendants argue that Plaintiffs' second cause of action is not ripe.  (*MJP* 4.)

The Takings Clause of the Fifth Amendment proscribes the government from taking private property for public use without just compensation to the property owner.  See Ward v. Ryan, 623 F.3d 807, 810 (9th Cir. 2010).  This doctrine applies to the states through the Due Process Clause of the Fourteenth Amendment.  See Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160 (1980).  To establish a violation of the Takings Clause here, Plaintiffs must first show that they have a property interest in the advertising permit.  See Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1198 (9th Cir. 1998).  If Plaintiffs possess an interest in the advertising permit, the Court must determine whether the dispossession of that interest constitutes a taking within the meaning of the Fifth Amendment, and therefore whether Defendants owe compensation.  See id.; see also  San Leandro Rock Co. v. City of San Leandro, 136 Cal. App.3d 25, 35 (1982) ("An otherwise valid ordinance may be invalid as applied to a particular plaintiff if it deprives him of 'substantially all use of his land,' so as to constitute 'excessive regulation in violation of the Fifth Amendment to the United States Constitution, and article 1, section 19, of the California Constitution.'" (quoting Agins v. City of Tiburon, 24 Cal.3d 266, 273 (1979), aff'd 447 U.S. 255 (1980)).

The Supreme Court has stated that a taking exists when a regulation "goes too far." <u>Pennsylvania Coal Co. v. Mahon</u>, 260 U.S. 393, 415 (1922).  However, "a court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes."  <u>MacDonald, Sommer & Frates v. Yolo Cnty.</u>, 477 U.S. 340, 348 (1986) (quoting <u>Pennsylvania Coal</u>, 260 U.S. at 415).  The Supreme Court's takings jurisprudence, therefore, relies on the ripeness doctrine articulated in <u>Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City</u> to aid in "distinguish[ing] the point at which regulation becomes so onerous that it has the same effect as an appropriation of the property through eminent domain or physical possession." <u>Williamson County</u>, 473 U.S. 172, 199 (1985).  Another purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies. . . ." <u>Abbot Laboratories v. Gardner</u>, 387 U.S. 136, 138 (1967) (overruled on other grounds by <u>Califano v. Sanders</u>, 430 U.S. 99 (1977)).

Although Defendants are correct in asserting that ripeness doctrine must apply to categorical takings, <u>see</u> <u>Lucas v. South Carolina Coastal Council,</u> 505 U.S. 1003, 1010-1014 (1992), the Court determines that Plaintiffs' claim is ripe.

      1.   *Final Decision*

The first and central inquiry in <u>Williamson County</u> is whether the "government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." <u>Williamson County</u>, 473 U.S. at 186 (explaining that a final decision means that "a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation").  Without a final decision, a court cannot determine whether the challenged regulation deprives the owner entirely of his property's "economically beneficial use," <u>Lucas</u>, 505 U.S. at 1015, thereby infringing on the owner's reasonable

investment-backed expectations to the extent that a taking has occurred.  See Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001).

In Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1454 (9th Cir. 1987), the Ninth Circuit interpreted Williamson County as requiring a final decision by the government which inflicts an actual, concrete harm upon the plaintiff property owner.  See also Herrington v. Cnty. of Sonoma, 857 F.2d 567, 569 (9th Cir. 1988).  The Ninth Circuit determined that a final decision, inflicting a concrete harm, is ripe for adjudication as a takings claim if the property owner can show a rejected development plan.  See Kinzli, 818 F.2d at 1454.  However, the Ninth Circuit has also recognized an to the final decision requirement where claimants are not required to establish a final decision when it would be futile to submit a development plan.  Id.

Plaintiffs argue that their claim satisfies the first Williamson County prong because Winterrowd's e-mail to Valerio, rescinding the advertising permit, can only be understood as a rejection of Plaintiffs' development plan.  (Opp'n 16.)  Defendants contend that the e-mail cannot be considered a final decision .  Citing Hodel v. Virginia Surface Mining & Reclamation Ass'n., Inc., 452 U.S. 264 (1981), Defendants  argue that the e-mail was insufficient to convey a final decision because it withdrew authorization, but was not a "final, definitive position regarding how [Defendants' will apply the regulations at issue to the particular land in question."  (MJP 5 (citing MacDonald, 477 U.S. 172).)  In other words, Defendants contend that the e-mail did not definitively reject Plaintiffs' plan, but rather conditioned re-authorization of the plan on Plaintiffs' submission of a site-survey and research report.  (Id. 5-6.)  Since the e-mail does not definitively bar Plaintiffs from pursuing their advertising plan, Defendants claim the e-mail is not Defendants' final decision.  (Id.)

Defendants' argument that the content of the e-mail was not a final decision is unavailing.  Defendants rendered a final decision when they granted Plaintiffs the advertising permit and then failed to make a timely determination of the need for a

research report pursuant to SDMC § 143.0212(c).  In granting the advertising permit on November 17, 2011, Defendants indicated that they had considered "the application of the regulations to the property at issue."  Williamson County, 473 U.S. at 186.  As previously discussed, Defendants ability to correct the advertising permit or condition its authorization on other requirements expired ten business days after Plaintiffs submitted their application.

Moreover, upholding Defendants' argument would eviscerate the statutory period established in SDMC § 143.0212(c).  If Defendants had an unlimited ability to rescind and re-condition the authorization of permits they have already approved, no permittee could ever rely on a permit to begin development or construction.

Finally, the parties do not dispute that Defendants' decision inflicts a "concrete harm" on Plaintiffs, as they remain obligated to pay for the lease with the Theater.  Kinzli, 818 F.2d at 1454.  Therefore, the Court finds that Plaintiffs have plead facts sufficient to establish that Defendants made a final decision with respect to the advertising permit well before Winterrowd e-mailed Valerio.

2.    *State Compensation and Writ of Mandate*

Defendants argue that they are entitled to judgment since Plaintiffs fail to satisfy the second prong of the Williamson County ripeness test.  (*MJP* 6.)  Plaintiffs contend that they fall within a futility exception to Williamson County.[6]  (*See Opp'n* 16-17.)

---

[6] In their opposition, Plaintiffs also argue that they sought just compensation by filing a claim against the City for damages, and were denied prior to initiating the present action.  (*Opp'n* n. 3)  Plaintiffs failed to plead this fact in their complaint, and subsequently requested the Court to either accept that fact as plead, or grant Plaintiffs leave to amend their complaint.  Id.  The Court finds that Plaintiffs have failed to satisfactorily argue why they are entitled to amend their complaint.  Should Plaintiffs still desire to include this claim, they may file a motion to the Court formally seeking leave to amend the complaint pursuant to the relevant standards for such a motion as established by the Ninth Circuit.

12-CV-1200W

The second prong of the ripeness test in <u>Williamson County</u> states that a takings claim is not ripe if the property owner has not sought compensation through any procedures the State provides for doing so.  <u>See</u> <u>Williamson County</u>, 473 U.S. at 194. The Takings Clause of the Fifth Amendment does not prohibit the government from taking private property, but rather proscribes taking without just compensation.  <u>See</u> <u>id.</u>  Therefore, a federal court lacks jurisdiction over an as-applied regulatory takings claim until the property owner has availed herself of the State's adequate procedures for seeking just compensation and has been denied.  <u>See</u> <u>id.</u>; <u>Dodd v. Hood River County</u>, 59 F.3d 852, 859 (9th Cir. 1955).

The Court is unimpressed by Defendants' bare assertion that they are entitled to judgment since Plaintiffs have failed to file an inverse condemnation action under article 1, section 19 of the California Constitution. (<em>MJP</em> 6.)  Defendants' failure to cite any authority requiring inverse condemnation proceedings which would apply to the particular posture of the case at bar[7] is fatal to their motion.  <u>See</u> Fed. R. Civ. P. 12(c).

To the extent that Defendants argue that California Code of Civil Procedure § 1085 requires Plaintiffs to challenge Defendants' rescission of the permit, the Court is similarly unpersuaded.  (<em>See Reply</em> 3-4.)  In making this argument, Defendants cite <u>Environmental Protection and Information Center v. California Department of Forestry</u>, 44 Cal. 4th 459, 521 (2008), for the proposition that administrative decisions not "requir[ing] a hearing or response to public output" are reviewable under Cal. Civ. Proc. § 1085.  (<em>Reply</em> 4.)  While it may be true that particular administrative decisions are properly reviewed under § 1085, Defendants have not shown that <u>Environmental Protection</u> or § 1085 are applicable to the present case.

---

[7] At least one case suggests that the Ninth Circuit may interpret <u>Williamson County</u> in a way that does not require the takings claimant to pursue adjudication in state court in every instance.  <u>See</u>, <u>e.g.</u> <u>Dodd v. Hood River County</u>, 59 F.3d at 860-861 ("Reduced to its essence, to hold that a taking plaintiff must first present a Fifth Amendment claim to the state court system as a condition precedent to seeking relief in a federal court would be to deny a federal forum to every takings claimant.").

The California Supreme Court has held that writs of mandate are issued only if two requirements are met: (1) a "clear , present and usually ministerial duty upon the part of the [defendant]," and (2) a "clear, present and beneficial right in the [plaintiff] to the performance of that duty." Shamisian v. Dept. of Conservation, 136 Cal. App. 4th 621, 640 (2006). Though Defendants were not statutorily obligated to hold a hearing or provide an opportunity for public input on the matter before revoking Plaintiffs' permit, § 1085 does not apply because Defendants' grant of the permit was an exercise of administrative discretion, and not "a duty resulting from an office, trust, or station." Cal. Civ. Proc. § 1085. Furthermore, although Plaintiffs' business clearly would have benefitted from the permit, they did not have a clear right to the permit before Defendants authorized it. Therefore, Cal. Civ. Proc. § 1085 does not require Plaintiffs to secure a writ of mandate compelling Defendants to re-authorize the permit, and Plaintiffs' takings claim does not fail Williamson County for lack of such a writ.[8]

In light of the foregoing, the Court finds that Defendants have not established that Plaintiffs' claims must fail for lack of ripeness. See Enron Oil, 132 F.3d at 529. Therefore, the Court **DENIES** Defendants' motion on this ground.

## C.   Procedural Due Process Rights

Plaintiffs' allege in their first cause of action that rescission of the permit resulted in the unlawful deprivation of Plaintiffs' property without notice, a hearing, or an opportunity to be heard in violation of procedural due process rights guaranteed by the Fifth and Fourteenth Amendment. (*Compl.* ¶ 43.) Defendants argue that they are entitled to judgment since Plaintiffs lack the requisite property interest needed to sustain a violation of procedural due process. (*MJP* 9.) The Court finds that Plaintiffs

---

[8]Additionally, the Court denies Defendants' motion to the extent that it argues that Plaintiffs' failure to seek a writ of mandate pursuant to § 1085 bars the present claim as a matter of res judicata, rather than ripeness, as § 1085 does not apply here.

have alleged a violation of their Fourteenth Amendment right to procedural due process.[9]

As discussed above, the Court finds that Plaintiffs have a protectable property interest in the permit.  Because Defendants' motion on this ground is premised on their incorrect contention that Plaintiffs lack a vested property right, the Court **DENIES** Defendants' motion.  See Enron Oil, 132 F.3d at 529.

### D.  <u>Substantive Due Process Rights</u>

Plaintiffs' third cause of action alleges that  rescission of the permit resulted in the unlawful deprivation of Plaintiffs' property without notice, a hearing, or an opportunity to be heard in violation of substantive due process rights guaranteed by the Fifth and Fourteenth Amendment.  (*Compl.* ¶ 49.)  Defendants again argue that they are entitled to judgment since Plaintiffs lack the requisite property interest needed to sustain a violation of substantive due process.  (*MJP* 9.)

Because Defendants' motion on this ground is premised on their incorrect contention that Plaintiffs lack a vested property right, the Court **DENIES** Defendants' motion.  See Enron Oil, 132 F.3d at 529.[10]

//

//

//

---

[9] The Fifth Amendment only limits the conduct of the federal government, and as such cannot be used against Defendants here since they are not federal actors.  See Barron v. City of Baltimore, 32 U.S. 243, 247 (1833).

[10] Plaintiffs' substantive due process argument is only valid insofar as it asserts a violation of the Fourteenth Amendment.  There can be no Fifth Amendment violation here since Defendants are not federal actors.  See Barron, 32 U.S. 243, 247 (1833).

### E.     Intentional Misrepresentation

Plaintiffs' fourth cause of action alleges that Defendants are liable under the common law tort of intentional misrepresentation for telling Plaintiffs their permit was defective for lack of a research report.  (*Compl.* ¶ 52.)  Defendants allege that they are entitled to governmental immunity from this claim.  (*MJP* 10.)

Under California law, a party must prove seven elements to establish a claim of intentional misrepresentation: (1) the defendant represented to plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew the representation was false when the defendant made it, or made it recklessly and without regard for its truth; (4) the defendant intended the plaintiff to rely on the representation; (5) the plaintiff did reasonably rely on the representation; (6) the plaintiff suffered a harm; (7) plaintiff's reliance on defendant's representation was a substantial factor in causing plaintiff's harm.  Manderville v. PCG & S Group, Inc., 146 Cal. App. 4th 1486, 1498 (2007).  A public entity is not liable for harms resulting from any intentional misrepresentations made by its employees.  Cal. Gov't Code § 818.8. Furthermore, a public employee, acting in the scope of her employment, will not be liable for any harms caused by her intentional misrepresentation, unless the employee is guilty of actual fraud, corruption, or actual malice.  Cal. Gov't Code § 822.2. California law defines actual malice as "a conscious intent to deceive, vex, annoy or harm the injured party."  Curcini v. County of Alameda. 164 Cal. App. 4th 629, 649 (2008) (explaining that a claimant must plead specific facts showing that the misrepresentation was motivated by actual malice).

Pursuant to § 818.8, the City is immune from any intentional misrepresentation Winterrowd committed during the course of her employment in CDS.  See Cal. Gov't Code § 811.2 (including "city" in the statutory definition of "public entity"). Therefore, the Court **GRANTS** Defendants' motion for judgment on the pleadings to the extent

that they allege the City is immune from liability for Plaintiffs' fourth cause of action. However, Defendants have failed to show that judgment on this ground is warranted for Winterrowd.[11]

Plaintiffs allege that Winterrowd required Plaintiffs to conduct a site survey and submit a research report only after City Council staff members and other individuals in support of preserving the Agua Caliente sign declined to do so.   (*Compl.* ¶ 52.) Plaintiffs argue that conditioning authorization of the permit on submission of a research report was a misrepresentation which Winterrowd "made with malice and an intent to deceive." (*Id.*)  Defendants' motion contends that Plaintiffs failed to allege either fraud or actual malice, and as such Winterrowd is entitled to judgment on this count.   (*MJP* 10.)   Since Plaintiffs have plead actual malice, the Court denies Defendants' motion on this count to the extent that it contends that Winterrowd is immune from liability under Cal. Gov't Code § 822.2.

## F.   <u>Injunctive Relief</u>

Plaintiffs' fifth cause of action alleges that they are entitled to an injunction prohibiting Defendants from refusing Plaintiffs authorization to repaint the Agua Caliente sign in order to offset the cost of Plaintiffs lease with the theater and recoup other alleged business losses. (*Compl.* ¶ 55.)  Defendants argue that this Court may not issue an injunction that would force the City to violate its municipal code. (*MJP* 11.) Defendants have not shown that a preliminary injunction is improper.

---

[11] Plaintiffs also allege that DOES 1-20 are liable for intentional misrepresentation.  To the extent that any of the DOES are public entities, those entities are immune under § 818.8. However, the Court must also reject Plaintiffs' allegation of liability to the extent that any of the DOES are public employees because Plaintiffs failed to plead specific facts demonstrating actual malice committed by those individuals.  <u>See</u> <u>Curcini</u>, 164 Cal. App. 4th at 649 ("Nor are conclusory allegations of corruption or malice sufficient to bring a fraud action within the exception of Government Code section 822.2.").

In their motion, Defendants cite both Cal. Civ. Proc. § 526(b)(4) and Cal. Civ. Code § 3426(d) for the proposition that the Court may not issue an injunction to "prevent the execution of a public statute, by officers of the law, for the public benefit." (*Id.*)  However, Defendants fail to explain how these statutes apply here.  Moreover, Defendants' argument that "a permit cannot be granted for development on the premises where a historical resource is present unless the applicant first performs a site specific survey" is flawed.  (*MJP* 11.)  As explained above, such a survey is not always required and it is not always the applicant's responsibility to perform such a survey.

Defendants further rely on Tahoe Keys Property Owners' Association v. State Water Resources Control Board, 23 Cal. App. 4th 1459, for the general rule that this Court may not enjoin public officers or agencies from performing their duties.  (*MJP* 11.)  Tahoe Keys does not conclusively demonstrate that this Court may not grant Plaintiffs a preliminary injunction in the present circumstances.  After noting the general rule discussed above, the Tahoe Keys court further clarified that this rule "would not preclude a court from enjoining unconstitutional or void acts."  Id. at 1471.  See also Payne v. English, 79 Cal. 540, 548 (1889) ("[T]here is no public statute or other law which authorized defendants to take plaintiffs' land, at least without proceedings under the power of eminent domain."); Newberry v. Evans, 97 Cal. App. 120, 125 (1929) ("[W]here land is wrongfully taken for a public use the owner . . . may proceed by injunction[.]"); Felton Water Co. v. Superior Ct. Of Santa Cruz Cnty., 82 Cal. App. 382, 386 (1927) ("The taking of private property before the amount of the compensation is ascertained will be enjoined[.]").  Here, Defendants fail to explain why Plaintiffs specific allegations of constitutional violations do not fall within the Tahoe Keys rule that the court would enjoin unconstitutional or void acts.    In light of the foregoing, the Court **DENIES** Defendants' motion on this ground.

//

//

1

### G.   California Civil Code § 52.1

2

3      Plaintiffs' sixth cause of action alleges that Defendants' violation of Plaintiffs

4  constitutionally-protected rights renders Plaintiffs eligible for damages pursuant to Cal.

5  Civ. Code § 52.1(b).  (*Compl.* ¶ 59.)  Defendants argue that Plaintiffs failed to allege

6  all of the necessary elements to establish a claim under §52.1.  (*MJP* 10-11.)

7      Cal. Civ. Code § 52.1, also known as the Bane Act, creates a civil action

8  against any person who "interferes by threats, intimidation, or coercion . . . with the

9  exercise or enjoyment" of an individual's rights under the Constitutions and laws of

10 California and the United States. Cal. Civ. Code § 52.1(a)-(b). "The essence of a Bane

11 Act claim is that the defendant, by . . . threats, intimidation or coercion . . . tried to or

12 did prevent the plaintiff from doing something he or she had the right to do under the

13 law or to force the plaintiff to do something that he or she was not required to do under

14 the law." Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007).

15 Therefore, a successful §52.1 claim requires two showings: "[(1)] a predicate—the

16 application of threat, intimidation, or coercion—and [(2)] an object—interference with

17 a constitutional or statutory right." Rodriguez v. City of Fresno, — F. Supp. 2d —,

18 2011 WL 1883195, at *12 (E.D. Cal. 2011). Violation of the victim's constitutional or

19 statutory rights alone is not enough. Venegas v. Cnty. of Los Angeles, 32 Cal. 4th 820,

20 843 (2004) ("[S]ection 52.1 provides remedies for certain misconduct that interferes

21 with federal or state laws, *if accompanied by threats, intimidation, or coercion*.") (emphasis

22 added) (internal quotes omitted).  Although the California Civil Code does not define

23 "threats," "intimidation," or "coercion," the plain meaning of those terms suggests that

24 some form of compulsion through force, implied force, or psychological pressure is

25

26

27

28

necessary to carry a claim under § 52.1.[12]  See Webster's Third New Int'l Dictionary 439, 1184, 2382 (1993).

Defendants concede that Plaintiffs alleged that they suffered a harm that was directly due to Defendants' actions.  However, Defendants point out that Plaintiffs fail to allege that Defendants used or implied the use of force against Plaintiffs or Plaintiffs' property.  Plaintiffs' failure to show this element is fatal to their § 52.1 claim. Therefore, the Court finds that Defendants satisfied their burden under 12(c) and **GRANTS** their motion for judgment on the pleadings on this count.[13]

## IV.  CONCLUSION

For these reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion for judgment on the pleadings [Doc. 13], and **ORDERS** as follows:

- Defendants' motion for judgment on the pleadings with respect to qualified immunity is **DENIED**.

- Defendants' motion for judgment on the pleadings with respect to Plaintiffs' takings claim is **DENIED**.

- Defendants' motion for judgment on the pleadings with respect to Plaintiffs' Fourteenth Amendment due process rights is **DENIED**.

- Defendants' motion for judgment on the pleadings with respect to Plaintiffs' Fourteenth Amendment substantive due process rights is **DENIED**.

---

[12] This interpretation is also consistent with judicial construction of identical language in the Massachusetts Civil Rights Act, which was the model for California's Bane Act.  See Cole v. Doe, 387 F. Supp. 2d 1084, 1103-04 (N.D. Cal. 2005) ("Section 52.1 is modeled on the Massachusetts Civil Rights Act of 1979.  Decisions construing the Massachusetts statute may thus be consulted in applying our statute.") (internal citations omitted).

[13] In their opposition, Plaintiffs indicate their desire to withdraw their § 52.1 claim and file an amended complaint dismissing the complaint.  (Opp'n 21.) This is unnecessary, as the Court finds that Defendants have satisfied their burden of proving that no set of facts exist which would entitle Plaintiffs to judgment on that claim.

- • Defendants' motion for judgment on the pleadings for immunity from intentional misrepresentation as to the City is **GRANTED**. Defendants' motion for judgment on the pleadings for immunity from intentional misrepresentation as to Cathy Winterrowd is **DENIED**.

- • Defendants' motion for judgment on the pleadings with respect to Plaintiffs' request for injunctive relief is **DENIED**.

- • Defendants' motion for judgment on the pleadings with respect to California Civil Code § 52.1 is **GRANTED**.

**IT IS SO ORDERED.**

**DATED:  June 17, 2013**

Hon. Thomas J. Whelan
**United States District Judge**

12-CV-1200W